**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

JOSEPH ARRUDA

    v.                                                                                          C.A. No. 15-269-ML

UNITED FINANCIAL
CASUALTY COMPANY

**MEMORANDUM AND ORDER**

The Plaintiff, Joseph Arruda ("Arruda") seeks a declaration that the automobile insurance policy issued to him by Defendant United Financial Casualty Company ("United") (1) had not been canceled prior to October 18, 2014; (2) was in effect on that date; and that (3) United must provide coverage for a motor vehicle accident loss that occurred on October 18, 2014.

Both parties have moved for summary judgment. For the reasons set forth below, Arruda's motion for summary judgment is denied and United's motion for summary judgment is granted.

**I. Facts[1]**

Arruda owns and operates Allied Investments, Inc. ("Allied"), a real estate business that owns and manages rental properties. ASF ¶ 1. Arruda exclusively makes insurance decisions for Allied and also for his personal insurance needs. ASF ¶ 5. For the past ten years, Arruda's insurance agent for all of his and Allied's

---

[1] The facts are taken primarily from the Parties' Agreed Statement of Facts ("ASF") (Dkt. No. 15).

insurance needs has been Dave Herbst ("Herbst"), the owner of Burns & Cotter, a general insurance agent that places insurance with a number of carriers. ASF ¶¶ 6,7. During that time, Arruda obtained insurance coverage with limits of $1,000,000 on vehicles owned by himself and by Allied. ASF ¶ 8.

Prior to October 9, 2014, Arruda had purchased two commercial insurance policies:

(1) the "Travelers Policy," issued by Travelers Insurance company, effective June 25, 2014 to June 25, 2015, naming Allied as the insured, and providing $1,000,000 in coverage for a 2010 Chevrolet Silverado owned by Allied and driven by Arruda's nephew Michael, who owns 7% of Allied; and

(2) the "Progressive Policy," issued by United, effective February 15, 2014 to February 15, 2015, naming Arruda as the insured and providing $1,000,000 in coverage for a 2011 Toyota Tacoma (the "Toyota") driven by Arruda. ASF ¶¶ 9-12.

In early October 2014, Herbst learned that the Toyota was owned by Allied, not by Arruda. Concerned that the Toyota might not be validly covered, Deb Kenney ("Kenney"), a Burns & Cotter customer representative, added the Toyota to the Travelers Policy. ASF ¶¶ 22-25. It is undisputed that Arruda, who had repeatedly expressed his displeasure at high premium costs, approved the change from the Progressive Policy to the Travelers Policy, which resulted in a significantly lower premium at the same or better

2

coverage level. ASF ¶¶ 25-27. The Travelers Policy coverage for the Toyota was effective as of October 9, 2014 and included Arruda as a named driver.  ASF ¶¶ 25.

It is undisputed that Arruda understood that "with the change in coverage from the Progressive Policy to the Travelers Policy, the Progressive Policy would go away and there would no longer be a Progressive Policy." ASF ¶¶ 28. Likewise, it is undisputed that Arruda did not intend to have two polices for the Toyota and did not intend to pay two premiums for two policies for the Toyota;" rather, he "intended to have one policy and pay one premium." ASF ¶¶ 28, 29.

After binding coverage for the Toyota on the Travelers Policy, Kenney did not notify Progressive of the cancellation of the Progressive Policy on that date. ASF ¶ 30. It was Burns & Cotter's business practice to wait until it received written confirmation of the new coverage before notifying the prior carrier of the cancellation. Id.

On October 18, 2014, Arruda was involved in a motor vehicle accident (the "Accident") while driving the Toyota; Arruda reported the accident to Progressive directly. ASF ¶¶ 37, 38.

On October 20, 2014, Burns & Cotter prepared an Automobile Loss Notice regarding the Accident, which it sent to Travelers. ASF ¶¶ 37. On the same date, Burns & Cotter received confirmation that the Toyota had been added to the Travelers Policy. ASF ¶ 31.

The following day, Kenney prepared a Cancellation Request/Policy Release ("Form 35"), advising Progressive that coverage under the Progressive Policy had been "rewritten" with Travelers effective October 9, 2014. ASF ¶¶ 31, 32. Kenney also informed Travelers by telephone about the Accident on that day. ASF ¶¶ 37.

Arruda signed Form 35 on October 23, 2014 and Kenney faxed the form to Progressive. ASF ¶ 34. The cancellation date in Form 35 is specified as "10/09/14." ASF ¶ 32 Ex. 15 (Dkt. No. 15-10). The "Policy Release Statement" above Arruda's signature states as follows:

> The undersigned agrees that:
> The above referenced policy is lost, destroyed or being retained.
> No claims of any type will be made against the Insurance Company, its agents or its representatives, under this policy for losses which occur after the date of cancellation shown above.
> Any premium adjustment will be made in accordance with the terms and conditions of the policy.

On November 4, 2014, Progressive sent Arruda a letter acknowledging the cancellation of the Progressive Policy "at your request," and included a premium refund of $1,314. On advice of his attorney, Arruda did not cash the refund check. ASF ¶ 35. On November 5, 2014, Progressive sent another letter confirming cancellation of the Progressive Policy. ASF ¶ 36.

The Progressive Policy contains the following provisions relevant to this dispute:

4

>  15. Automatic Termination
>
>  If **you** obtain other insurance on an **insured auto**, any similar insurance provided by this policy will terminate as to that **insured auto** on the effective date of the other insurance. Ex. 4 at 25 (Dkt. No. 15-17 at page 13 of 13).

The Progressive Policy also provides:

>  You may cancel this policy by calling or writing us, and stating the future date that you wish the cancellation to be effective.
>  We may cancel this policy by mailing a notice of cancellation to the named insured shown on the Declarations Page at the last known address appearing in our records. If we cancel this policy at any time due to nonpayment of premium, notice of cancellation will be mailed at least ten (10) days before the effective date of cancellation. Notice of cancellation due to any reason other than nonpayment of premium will be mailed at least thirty (30) days before the effective date of cancellation. Ex. 4 at 44 (Dkt. 15-18 at page 10 of 12).

Following the Accident, Travelers acknowledged that the Travelers Policy provided coverage for the Accident. ASF ¶ 39. Progressive denied coverage for the Accident on the ground that the Progressive Policy was cancelled prior to the Accident. ASF ¶ 48.

**II. Procedural History**

On May 29, 2015, Arruda filed a complaint (Dkt. No. 1-1) against Progressive Casualty Insurance Company ("Progressive") in Rhode Island state court, which Progressive removed to this Court on June 26, 2015. On July 23, 2015, Progressive filed an answer in which it asserted that Arruda had failed to name the proper party to the action (Dkt. No. 6). With permission by this Court, Arruda filed an amended Complaint (the "Complaint") on January 19, 2016 in

which he named United[2] as the proper party defendant (Dkt. No. 12). Pursuant to the scheduling order (Dkt. No. 9) issued by this Court on August 24, 2015, the parties filed cross-motions for summary judgment on January 29, 2016 (Arruda Mot., Dkt. No. 14; United Mot., Dkt. No. 16). The Parties also submitted a Statement of Facts ("ASF") agreed to by the parties (Dkt. No. 15), to which they attached a list of agreed upon exhibits (Dkt. Nos. 15-1 through 15-19). United filed a response in opposition to Arruda's motion on February 16, 2016 (Dkt. No. 17). Arruda filed his response in opposition to United's motion on February 23, 2016 (Dkt. No. 16).

**III. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citations omitted). "A fact is material if it has the potential of determining the outcome of the litigation." Id. (quoting Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008).

---

[2] The pleadings interchangeably use the names "United" or "Progressive." According to United's memorandum in support of its motion for summary judgment, United is "a company within the Progressive Group of Insurance Companies." Defs.' Mem. At 3. (Dkt. No. 16).

The party seeking summary judgment bears the burden of establishing the lack of a genuine issue of material fact. Merchants Ins. Co. of New Hampshire, Inc. v. U.S. Fidelity and Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998). "Once such a showing is made, 'the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor.'" Flovac, Inc. v. Airvac, Inc., -- F.3d – 2016 WL 1319274 at *2 (1st Cir. April 4, 2016) (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir.2010)).

The Court, in considering a motion for summary judgment, "read[s] the record in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." Merchants Ins. Co. of New Hampshire, Inc. v. U.S. Fidelity and Guar. Co., 143 F.3d at 7 (citing Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997)).

"The presence of cross-motions 'neither dilutes nor distorts this standard of review." Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009)(quoting Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co., 486 F.3d 727, 732 (1st Cir. 2007)). Rather, "'[c]ross motions simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" Scottsdale Ins. Co. v. Torres, 561 F.3d at 77 (quoting Littlefield v. Acadia Ins. Co., 392 F.3d 1, 6 (1st Cir.

2004)); Reich v. John Alden Life Ins. Co., 126 F.3d at 6 ("When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn.").

**IV. Discussion**

The Court interprets the terms of an insurance policy in accordance with the rules established for the construction of contracts. New London County Mut. Ins. Co. v. Fontaine, 45 A.3d 551, 557 (R.I. 2012)(citing Beacon Mutual Insurance Co. v. Spino Bros., Inc., 11 A.3d 645, 649 (R.I.2011)). Accordingly, the Court looks at the four corners of a policy, viewing it "in its entirety, affording its terms their 'plain, ordinary and usual meaning.'" Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, Inc., 860 A.2d 1210, 1215 (R.I. 2004)(quoting Casco Indemnity Co. v. Gonsalves, 839 A.2d 546, 548 (R.I.2004)). "The test to be applied is not what the insurer intended by his words, but what the ordinary reader and purchaser would have understood them to mean." Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, Inc., 860 A.2d at 1215 (quoting Pressman v. Aetna Casualty and Surety Co., 574 A.2d 757, 760 (R.I.1990)).

Absent a finding that the policy is ambiguous, the Court does not deviate from the literal language of the policy. Lynch v. Spirit Rent-A Car, Inc., 965 A.2d 417, 425 (R.I. 2009)(citing Mallane v. Holyoke Mutual Insurance Co. in Salem, 658 A.2d 18, 20

(R.I.1995)). Only "[i]f the terms of the policy are ambiguous, subjecting them to more than one reasonable interpretation, 'the policy will be strictly construed in favor of the insured and against the insurer.'" Lynch v. Spirit Rent-A Car, Inc., 965 A.2d at 425 (quoting Mallane v. Holyoke Mutual Insurance Co. in Salem, 658 A.2d at 20).

As noted by the Rhode Island Supreme Court, "it is clear that the substitution of a second policy of insurance can work a cancellation of an original policy." Capuano v. Kemper Ins. Companies, 433 A.2d 949, 956 (R.I. 1981) (citing Nelson v. American Reliable Insurance Co., 286 Minn. 21, 27, 174 N.W.2d 126, 130 (Minn. 1970)). However, "in order for cancellation by substitution of policies to be effective, it must be based upon the mutual assent of both the insurer and the insured, and cancellation by substitution may not be unilaterally affected unless the policy so provides." Capuano v. Kemper Ins. Companies, 433 A.2d at 956 (emphasis added)(citing Northern Insurance Co. of New York v. Mabry, 4 Ariz. App. 217, 219, 419 P.2d 347, 349 (1966); Tyner v. Cherokee Insurance Co., 262 S.C. 462, 205 S.E.2d 380, 381 (1974)). As the Rhode Island Supreme Court further clarified, "the policies [have] to be sufficiently similar in order that one policy could reasonably be considered a substitute for the other." Employers Mutual Casualty Company v. Martin, 671 A.2d 798, 800 (R.I. 1996).

Arruda takes the position that the October 23, 2014

9

communication from Kenney, informing Progressive that the Progressive Policy had been cancelled effective October 9, 2014 could not function as a "retroactive cancellation," and that, therefore, the Progressive Policy was still in effect on October 18, 2014, the date of the Accident. Pltf.'s Mot. Sum. Judg. at 1 (Dkt. No. 14-1). Arruda also suggests that the Automatic Termination provision in the Progressive Policy is unenforceable because (a) the provision is ambiguous, id. at 15; (b) the Travelers Policy is not a "similar" policy, id. at 12; and (c) Arruda and Progressive did not mutually agree that the Progressive Policy was cancelled on October 9, 2014. Pltf.'s Reply at 2 (Dkt. No. 18).

On its part, Progressive (United) takes the position that the Automatic Termination provision of the Progressive Policy was fully satisfied by the transfer of coverage for the Toyota to the Travelers Policy on October 9, 2014. Def.'s Mot. Sum. Judg. at 28 (Dkt. No. 16). For the reasons that follow, the Court agrees with that position.

The Progressive Policy at issue in this case contains an Automatic Termination provision, pursuant to which "any similar insurance provided by this policy will terminate as to that **insured auto** on the effective date of the other insurance," in the event the insured obtains "other insurance on an **insured auto**." As such, there is no discernible ambiguity to that provision. It simply

provides that obtaining a similar insurance policy results in the automatic termination of the Progressive Policy covering the same automobile and that the termination is effective on the same date the coverage starts under the new policy.

As indicated by Rhode Island case law, the policies have to be sufficiently similar for one to be reasonably considered a substitute of the other. See supra. In this case, it is undisputed that Arruda, concerned about not having proper coverage for the Allied-owned Toyota, and further motivated by the prospect of saving premium costs, authorized the switch from Progressive to Travelers. Both policies afforded $1,000,000 in liability coverage, $5,000 in medical coverage, and Collision and Comprehensive Coverage of actual cash value, less the applicable deductible. In addition, the Travelers Policy offered $1,000,000 in Uninsured Motorist Coverage (compared to only $25,000 provided by the Progressive Policy), and had only a $500 deductible (half the deductible under the Progressive Policy). Finally, the lower premium of the Travelers Policy yielded an annual savings of $2,540 to Arruda.

Given the similarity in the pertinent coverage provisions of the two policies and the fact that the differences between the two policies were only to Arruda's benefit, this Court finds that the policies were sufficiently similar to be deemed reasonable substitutes. Arruda's suggestion that he, himself, did not obtain

other insurance on the Toyota because, while he was the insured under the Progressive Policy, Allied was the insured under the Travelers Policy, is not relevant under the circumstances. It is undisputed that, with the exception of a small percentage, Arruda is Allied's majority owner. Arruda also acknowledged that he made all the decisions regarding Allied's and his own insurance needs. Finally, Arruda does not dispute that the very reason for obtaining the Travelers' Policy was to reflect Allied's ownership of the Toyota and to assure proper insurance coverage for that automobile.

With Arruda's consent and knowledge, his authorized insurance agent obtained coverage under the Travelers Policy, effective October 9, 2014. Pursuant to terms in the Progressive Policy, no further action would have been necessary to terminate that policy. Instead, under the clear terms of the Automatic Termination provision, the Progressive Policy terminated automatically as soon as the coverage under the Travelers Policy became effective on October 9, 2014.

As noted, Burns & Cotter's business practice was to await written confirmation of the new coverage before notifying the prior carrier. However, even if Burns & Cotter had never informed Progressive of the newly obtained coverage of the Toyota, the termination of the Progressive Policy would have become effective on October 9, 2014. Kenney's Cancellation Request/Policy Release, which cited October 9, 2014 as the effective date of the

termination, did not operate as a retroactive cancellation of the Progressive Policy; rather, it accurately reflected the automatic termination that had already occurred as a result of obtaining the Travelers Policy.

In sum, the Court finds that the Progressive Policy was effectively terminated on October 9, 2014, when coverage of the Toyota under the Travelers Policy became effective. The October 23, 2014 correspondence from Burns & Cotter was not a retroactive cancellation and, other than assisting Arruda in promptly recovering a portion of his already paid premium, it was superfluous in light of the Automatic Termination provision.

## Conclusion

For the reasons stated herein, Arruda's motion for summary judgment is DENIED. United's motion for summary judgment is GRANTED. The clerk is directed to enter judgment in favor of United.

SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
Senior United States District Judge

April 18, 2016